UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


CHAUVIN, ET AL                          CIVIL ACTION

VERSUS                                  NO.  05-6454

STATE FARM FIRE AND CASUALTY            SECTION "R" (4)
COMPANY, ET AL

This Document applies to the following civil actions in the
Eastern District of Louisiana:  Nos. 05-6454, 05-6455, 05-6456,
05-6457, 05-6458, 05-6887, 05-6888, 06-0078, 06-0177, 06-0252,
06-0340, 06-0518, 06-0558, 06-0559, 06-0560, 06-0561, 06-0596,
06-0830, 06-0831, 06-0885, 06-1053, 06-1064, 06-1081, 06-1090,
06-1091, 06-1092, 06-1148, 06-1242, 06-1243, 06-1271, 06-1571,
06-1585, 06-1597, 06-1734, 06-2919, and 06-2982.

## ORDER AND REASONS

All defendants in the above-captioned actions have moved for

dismissal of plaintiffs' claims pursuant to Rule 12 of the

Federal Rules of Civil Procedure.  For the following reasons, the

Court GRANTS defendants' motions.

## I.   BACKGROUND

Plaintiffs are Louisiana homeowners who allege that Hurricanes Katrina and/or Rita rendered their homes total losses. Some plaintiffs are individual homeowners seeking relief on their own behalf.  Some plaintiffs seek to represent a class of similarly-situated homeowners.  All plaintiffs ask for relief from their homeowner's insurers under Louisiana's Valued Policy Law, La. Rev. Stat. § 22:695.[1]  Many of these actions were transferred to this Court in order to resolve the question of whether the VPL applies under the facts alleged by plaintiffs. Plaintiffs allege that their homeowner's insurers improperly denied them coverage for their losses because the insurers refused to reimburse them for the full value of their homes as stated on their homeowner's policies.  Plaintiffs' homeowner's policies cover damage caused by wind and rain, but all contain a clause excluding coverage for damage caused by flood.[2]

_____

[1] The title of La. Rev. Stat. § 22:695 is actually "Valued policy clause; exceptions" but the Court uses the more common reference to this section for the sake of clarity.

[2] The exclusion found in Allstate's policy is typical.  It reads:
> We do not cover loss to the property described in **Coverage A - Dwelling Protection or Coverage B - Other Structures Protection** consisting of or caused by:

1. Flood, including but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

Defendants assert that these exclusions prevent plaintiffs from recovering for total losses when flooding was the proximate cause of the total losses.  Plaintiffs contend that the VPL entitles them to the full value of their policies, regardless of the proximate cause of their losses, so long as a covered peril caused some loss to their property.  Defendants dispute plaintiffs' interpretation of the VPL and argue that the VPL cannot be the basis for their relief because: 1) the VPL applies only to damage caused by fire; 2) even if the VPL extends to perils other than fire, it does not allow full recovery when the covered peril caused only a partial loss of the covered property; 3) plaintiffs' interpretation of the VPL would violate Louisiana's filed rate doctrine; 4) plaintiffs' interpretation of the VPL would violate both the Louisiana and United States constitutions; and 5) plaintiffs' VPL claims are necessarily preempted by federal law under the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-4129.

Defendants initially filed individual motions to dismiss these actions, and the Court ordered plaintiffs to file a consolidated response.  Defendants filed a consolidated reply brief, and following oral argument the parties submitted additional briefs on the construction of defendants' policies at the instruction of the Court.  After considering the parties'

submissions, the arguments presented orally to the Court, and relevant Louisiana law, the Court finds that the VPL does not authorize recovery based on the theory plaintiffs allege.

## II.  LEGAL STANDARD

### A.  Motions to Dismiss Under Rule 12

Defendants move for dismissal under both Rule 12(b)(6) and Rule 12(c) of the Federal Rules of Civil Procedure.  A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a Rule 12(b)(6) motion to dismiss.  *See Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989) ("[A] motion for judgment on the pleadings is subject to the same standard as a motion for dismissal for failure to state a claim."); *Davis v. City of Baldwyn*, 2000 WL 994469, at *2 (N.D. Miss. 2000).  In a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded facts as true and view the facts in the light most favorable to plaintiffs.  *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *American Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir. 1991).  The Court will generally not look beyond the face of the pleadings to determine whether dismissal is warranted under Rule 12.  Fed. R. Civ. P. 12(b); Fed. R. Civ. P. 12(c); *Spivey v. Robertson*, 197

4

F.3d 772, 774 (5th Cir. 1999) (consideration of documents outside the pleadings requires converting the motion to one for summary judgment).  However, uncontested documents referred to in the pleadings may be considered by the Court without converting the motion to one for summary judgment, even when these documents are not physically attached to the complaint.  *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002).  The Court must resolve doubts as to the sufficiency of the claim in plaintiffs' favor.  *Vulcan Materials Company v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001).  Dismissal is warranted if it appears certain that plaintiffs cannot prove any set of facts in support of their claim that would entitle them to relief. *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395 (5th Cir. 2005).

**B.   Interpreting Louisiana Law**

When a federal court interprets a Louisiana statute, it must do so according to the principles of interpretation followed by Louisiana courts.  *Gen. Elec. Capital Corp. v. Se. Health Care, Inc.*, 950 F.2d 944, 950 (5th Cir. 1991).  In Louisiana, the sources of law are legislation and custom.  *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004).  These authoritative or primary sources of law are to be "contrasted with persuasive or secondary sources of law, such as

[Louisiana and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in reaching a decision in the absence of legislation and custom." *Id.* (*quoting* La. Civ. Code art. 1*)*.  In Louisiana, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes." *Id.* (*quoting Prytania Park Hotel, Ltd. v. General Star Indem. Co.,* 179 F.3d 169, 174 (5th Cir. 1999))*.  To make an 'Erie guess' on an issue of Louisiana law, the Court must "employ the appropriate Louisiana methodology" to decide the issue the way that it believes the Supreme Court of Louisiana would decide it.  *Id.* (*quoting Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003)).

## III. DISCUSSION

### A.   The Valued Policy Law

Louisiana's Valued Policy Law was originally enacted in 1900, "in order to secure greater certainty in the contract of insurance."  *See New Orleans Real Estate Mortgage & Sec. Co. v. Teutonia Ins*. *Co. of New Orleans, et al*, 54 So. 466, 473 (La. 1910).  The statute persisted, with minor adjustments in its language, until 1988 when it was repealed.  It was reenacted in 1991 with some changes to its language.  The current version

states, in relevant part:

>    A. *Under any fire insurance policy insuring
> inanimate, immovable property in this state*, if the
> insurer places a valuation upon the covered property
> and uses such valuation for purposes of determining the
> premium charge to be made under the policy, *in the case
> of total loss the insurer shall compute and indemnify
> or compensate any covered loss of, or damage to, such
> property which occurs during the term of the policy at
> such valuation without deduction or offset*, unless a
> different method is to be used in the computation of
> loss, in which latter case, the policy, and any
> application therefor, shall set forth in type of equal
> size, the actual method of such loss computation by the
> insurer. . . .

>    B. Any clause, condition, or provision of a policy of
> fire insurance contrary to the provisions of this
> Section shall be null and void, and have no legal
> effect. . . .

La. Rev. Stat. § 22:695 (emphasis added).  Louisiana's Valued

Policy Law is contained within Chapter 1, Part XV of the

Insurance Code, titled "Standard Fire Policy."  La. Rev. Stat. §

22:691-695.[3]  Section 22:691(A) states that "[t]he printed form

of a policy of fire insurance, as set forth in Subsection F shall

be known and designated as the 'standard fire insurance policy of

the State of Louisiana.'"  La. Rev. Stat. § 22:691(A).  The form

provides for insurance "against all DIRECT LOSS BY FIRE,

LIGHTNING AND BY REMOVAL FROM PREMISES ENDANGERED BY THE PERILS

---

[3] Section 22:696 did not become effective until December 6, 2005, and thus does not bear on the cases before the Court.  *See* 2006 La. Sess. Law Serv. 1st Ex. Sess. Act 42 (H.B. 97) (West).

INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED .
. . ."  La. Rev. Stat. § 22:691(F) (capital letters in original).
The form also provides that insurance against any other peril
"shall be by endorsement in writing hereon or added hereto."  *Id*.

### A.   Perils Other Than Fire

The parties disagree as to whether the VPL applies to perils
other than fire.  Defendants assert that the plain language of
the VPL demonstrates that it applies only to the peril of fire,
that the history of the VPL shows that it historically was meant
to protect against the particular problems of evaluating a loss
caused by fire, and that federal courts have found that the VPL
applies only to the peril of fire.  Plaintiffs contend that the
term "any fire insurance policy" in the VPL refers to any
homeowner's insurance policy in Louisiana that covers fire and
other perils, such as wind.  Plaintiffs assert that there is no
such thing as a single-peril fire policy in Louisiana, that the
term "fire policy" is broadly used in the insurance industry to
refer to a homeowner's policy, and that Louisiana courts have
applied the VPL to losses caused by perils other than fire.

After extensive briefing and oral argument on the question
of whether the VPL applies to hazards other than fire, the Court
has concluded that it need not answer this question to resolve
the dispute.  Needless decisions of state law should be avoided

as a matter of comity.  *United Mine Workers of America v. Gibbs*,
383 U.S. 715, 726 (1966); *see also W.R. Grace & Co. v.
Continental Cas. Co.*, 896 F.2d 865, 871 (5th Cir. 1990) ("Gibbs
teaches that federal courts must refrain from unnecessary
poaching upon a sovereign state's jurisprudential turf.").
Particularly when, as here, the Court's decision would have
"widespread ramifications" for an important industry, the Court
should refrain from making a needless Erie guess.  *See, e.g.,
Jesco Const. Corp. v. NationsBank Corp.,* 278 F.3d 444, 448 (5th
Cir. 2001).  Federal and state jurisprudence appear to give
opposing guidance on the question of whether the VPL applies to
perils other than fire.  *Compare, e.g., Graham v. Milky Way
Barge, Inc.*, 824 F.2d 376, 381 (5th Cir. 1987) (holding that the
"anti-technical" language of section 22:692, which applies to
"polic[ies] of fire insurance" does not apply to a policy
covering a capsized "jack up" vessel operating offshore and
noting that "[b]ased upon the language of the statute itself, the
provision would appear to apply to fire policies only"); *and In
re Consolidated Cos.*, 185 B.R. 223 (E.D. La. 1995), *aff'd* 105
F.3d 396 (5th Cir. 1996) (holding that an insurer need not comply
with the VPL with respect to the non-fire perils covered by the
policy); *with Grice v. Aetna Cas. & Sur. Co.*, 359 So. 2d 1288
(La. 1978) (holding that the standard fire policy and a broader

homeowner's policy were so intertwined that the prescriptive period in the standard fire policy applied to non-fire perils); *and Holloway v. Liberty Mutual Fire Ins. Co.*, 290 So. 2d 791, 794-95 (La. Ct. App. 1974) (citing the VPL to determine proper recovery when plaintiff's home was damaged by a leaky pipe). Accordingly, the issue involved here poses a significant question of unsettled state law that is best resolved by state courts in the first instance.  Because the Court finds that the claims plaintiffs assert under the VPL are clearly untenable for other reasons, it will assume *arguendo* that the statute applies to non-fire perils, and will not decide the issue of the applicability, *vel non*, of the VPL to non-fire losses.

**B.   Applying the VPL to a total loss not caused by a covered peril**

At oral argument, plaintiffs conceded that they seek to recover under the VPL even though they cannot prove that their total losses were caused by a covered peril.  Plaintiffs assert that their properties suffered a partial loss caused by the covered perils of wind and/or rain, and they are thus entitled to the face value of their homeowner's policies.  Plaintiffs rely heavily on the language of the VPL, which, again, reads as follows:

A. Under any fire insurance policy insuring inanimate, immovable property in this state, if the

10

insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, *in the case of total loss the insurer shall compute and indemnify or compensate any covered loss of, or damage to, such property which occurs during the term of the policy at such valuation without deduction or offset*, unless a different method is to be used in the computation of loss, in which latter case, the policy, and any application therefor, shall set forth in type of equal size, the actual method of such loss computation by the insurer. . . .

B. Any clause, condition, or provision of a policy of fire insurance contrary to the provisions of this Section shall be null and void, and have no legal effect. . . .

La. Rev. Stat. 22:695 (emphasis added).  The emphasized phrase in the middle of subsection A forms the crux of the question before the Court.  The parties do not dispute that plaintiffs' policies are indeed "valued policies," within the meaning of the statute, because the policies contain a valuation of the covered property used to determine the premium charged by the insurer.  The parties dispute only whether the VPL mandates that an insurer pay the full value of the covered property stated in the policy in the event that a total loss by any cause occurs simultaneously with a covered loss, however small.  Plaintiffs' homes sustained some damage from wind and/or rain, which is covered under their policies.  Plaintiffs contend that they are entitled to recover the full value of their policies even if flooding, an excluded peril, was the proximate cause of the total loss.

11

Louisiana's rules of statutory construction are contained in La. Civ. Code. arts. 9-13.  These principles guide the Court's analysis of the provisions of the VPL.  First, when a law is clear and unambiguous and its application does not lead to absurd consequences, the Court is prohibited from any further analysis and must apply it as written.  La. Civ. Code art. 9.  When statutory language is ambiguous, the Court must look to the context of the law as a whole to determine its meaning.  *Id*. at art 12.  If the statute is susceptible of multiple meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.  *Id*. at art. 10.

The Court must begin its analysis with the words of the statute.  *Shaw Constructors*, 395 F.3d at 546.  The Court concludes that the statutory language is ambiguous.  The statute directs that "in the case of total loss" the insurer "shall . . . compensate any covered loss" at the full value of the policy.  La Rev. Stat. § 22:695.  A literal reading of this clause can support plaintiffs' assertions that the statute requires insurers to pay any amount of covered loss at the full value of the policy.  However, the language also admits of another interpretation.  The statute can be read to require that the total loss also be a covered loss in order for the VPL to apply.  This reading is equally consistent with the surrounding language

and does not strain the language of the statute.  Thus, "total loss" and "covered loss" would not be construed as separate events, but rather as different descriptions of a single event with two crucial characteristics, i.e., that the loss be both total and covered.  *See Turk v. Louisiana Citizens Prop. Ins. Corp.*, 2006 WL 1635677 (W.D. La. 2006) (holding that the VPL requires an insurer to pay the full value of the policy only when a covered peril causes a total loss).  The statute is thus not as transparent as plaintiffs contend.

Even if the VPL were clear and unambiguous, however, Louisiana rules of statutory construction require the Court to avoid applications that lead to "absurd consequences."  *See* La. Civ. Code art 9 ("When a law is clear and unambiguous *and its application does not lead to absurd consequences*, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.") (emphasis added).  Because plaintiffs' proposed interpretation would lead to such absurd consequences, the Court must reject it.  If the VPL has the meaning plaintiffs ascribe to it, an insured holding a valued homeowner's policy that covered wind damage but specifically excluded flood losses could recover the full value of his policy if he lost 20 shingles in a windstorm and was simultaneously flooded under 10 feet of water.  The insurer would thus have to

13

compensate the covered loss of a few shingles at the value of the entire house.  In effect, the insurer would be required to pay for damage not covered by the policy and for which it did not charge a premium.  Such a result would be well outside the boundaries of any party's reasonable expectation of the operation of an insurance contract.  The Court seriously doubts that the Louisiana legislature intended such a commercially unreasonable result when it adopted the VPL.  Regardless of how the Court might choose to interpret the statutory language in a vacuum, it is much less likely to reach the same interpretation when the result would run contrary to common sense.  *See United States v. Izaguirre-Flores*, 405 F.3d 270, 277 (5th Cir. 2005) ("[W]e will not interpret a statute in a fashion that will produce absurd results.").  Such an interpretation would offend the cardinal rule of statutory construction in Lousiana, that courts not apply the terms of a statute in a way that leads to absurd consequences.  La. Civ. Code art. 9.

Another basic principle of Louisiana statutory construction is that if a statute is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.  La. Civ. Code art. 10.  There is not much evidence of the legislative purpose of the VPL.  What little evidence there is suggests that plaintiffs' interpretation of the

14

statute would not be the one that best conforms with its legislative purpose.  It is true, as plaintiffs suggest, that the statute was apparently designed to create greater certainty in insurance policies and to provide a type of liquidated damages. *See Hart v. N. British & Mercatile Ins. Co.*, 162 So. 177, 180 (La. 1935) ("The valued policy statute must be regarded as part of the policy of insurance, and the amount written in the policy as liquidated damages agreed upon by the parties, and this is so, notwithstanding the policy is inconsistent therewith."). Statements at such a level of generality do not shed light on the interpretive issue before the Court.  Other statements of legislative purpose found in the case law are more instructive. These other statements suggest that the statute was designed to regulate the valuation of a covered loss, not to create coverage for perils not covered by the policy.  In *Atlas Lubricant Corp. v. Fed. Ins. Co.*, 293 So. 2d 550 (La. Ct. App. 1974), the Louisiana Fourth Circuit Court of Appeal stated that the purpose of the VPL was to discourage insurers from writing insurance and collecting premiums for more than the property was worth and to deter the risk of intentional destruction that can result when property is over-insured:

> Valued policy laws or so-called total losses statutes dealing with Fire [insurance] policies were enacted by many states in the late 1800's and early 1900's

15

principally as a protective measure for insureds.  In
general, these valued policy laws require that in case
of total loss to an insured's property from certain
specified perils, the amount stated in the policy
declarations is considered the value of the structure
at the time of loss and is payable in full. In other
words, if the value of property is less than the amount
of insurance on a policy covering a building in a state
having such a law, the insurer is precluded in most
states from arguing that a lesser sum be paid, i.e.,
actual cash value . . . . The legislative intent of
these laws was to prevent over-insurance and other
abuses, that is, to keep insurers and their
representatives from writing insurance on property for
more than it is actually worth.  A second reason for
valued policy laws is to encourage insurers and
producers to inspect risks and assist prospective
insureds in determining insurable value of properties .
. . . It follows that failure of an insurer to inspect
a risk for valuation purposes can lead to
over-insurance and can produce a moral hazard as well.
In other words, if a building is insured for more than
its actual worth, an insured might be indifferent about
loss prevention. This situation might even give an
insured an incentive to intentionally cause damage to
his structure.

*Atlas*, 293 So. 2d at 556.  Similarly, in *Southern Produce Co. v.*

*Am. Ins. Co.*, 166 So. 2d 59 (La. Ct. App. 1964), the court

pointed out that the VPL was meant to prevent insurers from

insuring property at one value and then asserting that the

property had a reduced value after it is destroyed.  166 So. 2d

at 61 ("The insurer may not insure an inanimate immovable against

fire for a stated amount of insurance, and collect premiums based

on that amount, and then after a loss seek to show that the

insured interest was worth some amount less than the amount of

the policy.").  These statements of the legislative purposes behind the VPL are consistent with other accounts of the reasons why state legislatures began to adopt this type of legislation in the late 1800s and early 1900s.  *See, e.g.,* Tom Baker, *On the Geneology of Moral Hazard*, 75 Tx. L. Rev. 237, 262 (1996). Plaintiffs' proposed interpretation of the statute does nothing to further the foregoing statutory purposes.  If anything, were insurers required to pay the policy limits for partially covered losses, the likely result would not be deterrence of excessive premiums, but dramatically higher premiums.  Further, the Legislature's focus on valuation and not coverage in the VPL suggests that the results plaintiffs propose were not within legislative contemplation.

If the Louisiana VPL authorized the windfall type of recovery plaintiffs suggest, one would expect Louisiana case law to be emphatic in support of that proposition.  Plaintiffs point to two vintage Louisiana cases that they assert provide support for their position, but these cases do not stand for the sweeping proposition plaintiffs advocate.  *Hart*, quoted *supra,* involved the valuation of a fire loss.  There, the Louisiana Supreme Court first asked whether the facts showed a total or a partial loss of the building as a result of a fire.  The court concluded that the fire rendered the insured's structure a constructive total loss

because it destroyed 75 percent of the insured building.  The court held that the insurer must pay the value of the property stated in the policy because the VPL foreclosed the insurer from excluding from the loss valuation any loss occasioned by ordinance or law regulating construction or repair of buildings. 162 So. 177, 181; *see also Briede v. Commercial Union Assurance Co.*, 1917 WL 1628 (La. Ct. App. 1917) (same).  In *Hart* and *Briede*, there was a conflict between the VPL and provisions of defendants' fire policies governing the valuation of fire losses. Those policies put the companies' liability on a different basis from that mandated by the VPL and for that reason the VPL trumped the policies' conflicting provisions.  These cases do not stand for the principle that any amount of covered loss renders an insurer liable under the VPL for the face value of the policy even if a non-covered peril is the proximate cause of the total loss.

Plaintiffs also rely on three out-of-state decisions.  They rely most heavily on *Mierzwa v. Fla. Windstorm Underwriting Ass'n*, 877 So. 2d 774 (Fla. Dist. Ct. App. 2004), which interpreted a Florida valued policy statute that plaintiffs argue is substantially similar to Louisiana's.[4]  The homeowner in

_____

[4] At the time *Mierzwa* was decided, Florida's valued policy statute stated, in relevant part: "In the event of the total loss

18

*Mierswa* suffered a loss from both wind and flooding caused by
Hurricane Irene. *Id.* at 775. The policy covered damage from
wind alone, and it contained an anti-concurrent cause clause
excluding coverage for damage caused by any other peril. *Id.*
The court in *Mierzwa* held that when an insurance carrier has "any
liability at all to the owner for a building damaged by a covered
peril and deemed a total loss, that liability is for the face
amount of the policy." *Id.* at 775. A second Florida appellate
court has directly rejected the logic of the *Mierzwa* decision.
*See Citizens Property Ins. Corp. v. Ceballo,* 2006 WL 1331504 at
*1 (Fla. Dist. Ct. App. 2006). Moreover, the Florida legislature
responded to the *Mierswa* decision by revising the valued policy
law to make clear that an insurer is not responsible for damage
caused by excluded perils. 2005 Fla. Sess. Law Serv. Ch. 2005-
111 (inserting the phrase "if caused by a covered peril" into
Florida's valued policy law and specifying that "[t]he intent of
this subsection is not . . . to create new or additional coverage
under the policy, or to require an insurer to pay for a loss

---

of any building, structure, mobile home . . . located in this
state and insured by any insurer as to a covered peril , . . .
the insurer's liability, if any, under the policy for such total
loss, shall be in the amount of money for which such property was
so insured as specified in the policy and for which a premium has
been charged and paid." *See* 2005 Fla. sess. law Serv. 2005-111
(West).

caused by a peril other than the covered peril."). As the *Mierzwa* decision has been repudiated by the Florida legislature and its reasoning has been rejected by a sister court, the Court does not find it persuasive. Accordingly, the Court declines to follow it.

The other out-of-state cases that plaintiffs cite are wide of the mark. In *Johnson v. Medelia Lake Crystal Mutual Ins. Co.*, 2004 WL 61057 at *5 (Minn. Ct. App. 2004), the court rejected an insurer's argument that an earlier fire had caused the collapse of plaintiff's barn, because accumulated snow and ice, a covered peril, was a "direct cause of the damage." This case is inapposite because an insured peril was the direct cause of the total loss; the court merely ruled out an earlier event as the cause of the loss. Similarly, in *Benke v. Mukwonago-Vernon Mutual Ins. Co.*, 329 N.W. 2d 243, 245-46 (Wis. Ct. App. 1982), the court ruled that it was appropriate to instruct a jury that if a covered peril was a cause of a total loss, the insured ought to recover the full value of the policy. The evidence at trial in *Benke* strongly suggested that a covered peril caused the collapse of the insured's roof. *Id*. at 245. Moreover, the court's decision does not refer to Wisconsin's valued policy law.

Finally, other out-of-state cases have held that a covered loss must be the primary cause of the total loss for an insured

to recover under a valued policy law.  *See, e.g., Great Am. Ins. Co. v. Smith*, 172 So. 2d 558 (Miss. 1965) (valued policy law applied when fire was "dominant and efficient" cause of the destruction); *Brady v. State Ins. Co.*, 160 N.W. 882 (Neb. 1916) (plaintiff could not assert that both tornado and fire had "wholly destroyed" her home, such that the valued policy statute would allow her to recover under both policies).


**IV.   CONCLUSION**

The Court is mindful that Hurricanes Katrina and Rita have led to uninsured losses of catastrophic proportions.  The Court would have welcomed a valid basis to alleviate the financial losses suffered by so many Louisiana homeowners.  Unfortunately, the Court must recognize that the VPL was designed to fix valuations of losses and was not intended to expand coverage to excluded perils.  The Court concludes that Louisiana's Valued Policy Law does not apply when a total loss is not caused by a covered peril.  Consequently, plaintiffs' claims under the VPL that are predicated on this theory must be dismissed.  Because this ruling disposes of these claims, the Court does not reach defendants' other arguments.  This ruling does not reach any of plaintiffs' claims that are not predicated on the interpretation of the VPL discussed in this opinion.

New Orleans, Louisiana, this __2nd__ day of August, 2006.

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE